## EMERSON vs. The inhabitants of the county of WASHINGTON.

The Court of Sessions, in appointing a committee to enter into a contract for opening and making a road laid out by their order, and the committee, in making such contract, do not act as the private agents of the county, but as public officers, exercising their authority in carrying into effect a public law, for the public good.

For the expense of making such a road the county is not liable; the only remedy being by warrant of distress against the towns through which the road runs, according to the statute.

THIS action was *assumpsit*, upon a special contract for the making of a county road through *Baileyville* and the plantation numbered seventeen; the writ containing also the common counts. It was served by the Sheriff of the county, instead of a coroner; for which cause the defendant moved the court to quash it; but the motion was overruled by *Weston J.* before whom the cause was tried, in order first to examine the merits.

At the trial, the following facts were proved. A certain highway having been legally laid out by the Court of Sessions, from the north line of *Baring*, to *Lewey's* island, through the town of *Baileyville* and plantation No. 17, and thence from the north line of the State lands to the *Baskahegan* carrying place; and twelve months, which had been allowed for opening the road through *Baileyville* and the plantation, having elapsed, and the road not yet being opened; the Court of Sessions advertised for proposals to open and make the road. The lowest offer being made by the plaintiff, the court appointed a committee composed of *George Downes, Reuben Lowell* and *Samuel Kelley*, Esquires, " to enter into any contract or contracts for opening, laying open, and making passable the same road as a public highway for the public use and convenience," through that town and plantation, " in manner and form as the law in such cases directs." Warrants being accordingly issued to the committee, they entered into a written contract with the plain-

tiff to open and make the road, being the length of about fifteen miles, for two dollars and forty-eight cents per rod, "said *Emerson* to receive his pay for making said road as soon as the same can be realized by any of the modes which the law provides for raising money for defraying the expenses in such cases, by warrant of distress or other means, after the faithful completion of his contract." The plaintiff at the same time gave a bond to the county treasurer, in the penal sum of twenty thousand dollars, conditioned for the faithful performance of his part of the contract; and made the road accordingly, which the committee approved and accepted, *November* 16, 1831, by written indorsement, under their hands, on the back of the contract. All these transactions were returned by the committee, together with their warrant, to the road commissioners for this county, who were successors to the Court of Sessions, by whom they were duly approved and placed on file. At the same time, which was at *December* term 1831, the plaintiff appeared before the commissioners, stating that he wanted his pay for making the road, the expense of which was $10,743 36, and requested them to issue warrants of distress forthwith, against the town and plantation, to raise the money. The commissioners declined making an order for the issuing of warrants forthwith, but ordered them to be issued in sixty days, the plaintiff not assenting to the delay. At the end of this period, the clerk issued warrants against the goods and chattels of the inhabitants of *Baileyville*, and also against those of the inhabitants of the plantation, adopting this form without special order, and upon his own views of the meaning of the statute; which warrants, being immediately delivered to an officer for service, were in due time returned not satisfied, the officer certifying that after diligent search for goods and chattels belonging to the inhabitants he could find none, either in the town or the plantation. And it was proved that the inhabitants, after the order for issuing the warrants, moved their cattle and hay out of the limits of the town and plantation, to prevent them from being taken by distress; and that probably there was no personal property there, which was distrainable. The plaintiff thereupon demanded the

payment of his bill of the county treasurer, and gave notice to the chairman of the commissioners that he should look to the county for indemnity.

Upon these facts a verdict was taken for the plaintiff, by consent, subject to the opinion of the court upon the question whether the action was maintained upon competent evidence; and if so, for what sum the defendants were liable; the verdict to be amended, or set aside and a nonsuit entered, according to the opinion of the court; unless they should sustain the motion to abate the writ for want of a sufficient service.

*Allen* argued for the plaintiff, citing *Hampden v. Franklin,* 16 *Mass.* 76; *Hayden v. Madison,* 7 *Greenl.* 76; *Abbot v. School District in Hermon, ib.* 118; *Hayward v. Leonard,* 7 *Pick.* 181; *Smith v. Lowell,* 8 *Pick.* 178; *Brown v. Somerset,* 11 *Mass.* 221.

*Greenleaf,* for the defendants.

MELLEN C. J. delivered the opinion of the Court at the *May* term 1832, in *Cumberland.*

The road or highway, the location of which has been the cause of the present action, is a part of the same road which was under our consideration in the other action between these parties in which we have given our opinion; being that part which runs through the town of *Baileyville* and plantation number seventeen. No question is made as to the legality of the location through the whole route and extent of the road, or the correctness of the proceedings of the Court of Sessions in the allowance of time for the opening and making the road·through the said town and plantation; or in the appointment and proceedings of the committee for the completion of the road. The committee were appointed by the court in virtue of the 12th *sec.* of *ch.* 118 of the revised statutes, which provides that "if any town shall neglect their duty in that respect" (that is, in opening and making the road passable) "the court, on application therefor, shall appoint a committee of three disinterested freeholders in the same county, to enter into any contract or con-

tracts for making such new highway passable as aforesaid ; the expense of which shall be immediately afterwards defrayed by the delinquent town, and in default thereof, the said court shall issue a warrant of distress against such town." By the 22d section of the same statute, plantations, like No. 17, are vested with similar powers and are under similar obligations in relation to making and repairing highways, as towns are ; and similar proceedings shall be had against them, as may be had against towns. The plaintiff having, under his contract with the committee, made and completed the road in question, to their acceptance, and the expense incurred in so doing, not having been collected by the statute process of distress against the town and plantation, or in any manner reimbursed to the plaintiff, the only question of any importance is, whether, in consequence of the proceedings had by the Court of Sessions and the committee, under their appointment, have rendered the county liable to the plaintiff in damages for all or any portion of the expenses by him incurred in opening and making the road.

When a road has been duly laid out and established by the Court of Sessions, and has not been opened and made within the time appointed, according to the above quoted provision, it is made the duty of the court to appoint a committee, as the proper and effectual mode of accomplishing the object in view in the location of the road. In performing this duty the court are not acting as the agents of the county, but as public officers, exercising their authority in carrying into effect a public law for the public good. The legislature have deemed it more proper that contracts for opening and making new roads passable should be made through the agency of a committee, than by a court in its public sessions. The act contemplates that the person or persons who contract to accomplish the object, are not to receive the stipulated compensation until it shall have been accomplished ; and then it is to be collected of the town or plantation through which it passes, by the sheriff in virtue of a warrant of distress. There is a manifest distinction between roads laid out by the Court of Sessions under the 23d section of the act before mentioned, through lands, townships or plantations not taxa-

ble, and those laid out in or through towns or plantations which are taxable, so far as respects the powers of the court in the two cases. In the former case, they may order a part or the whole of the expense of opening and making the road passable, to be paid by the county, if they consider it unreasonable that the owners of the township or plantation should be charged with it; but in the latter case, the court have no such discretion, nor any discretion. They can issue warrants of distress only against the towns or plantations in which the roads lie. It would seem to be a singular principle of law, that from the performance of certain official acts of the Court of Sessions, which they were bound to perform, a promise should be implied on the part of the county to pay the expense of opening and making the road, on the ground that the Court were the agents of the county, when the court could not by any order or official act, in express language, create such a liability on the part of the county. It is a familiar principle, that the law does not imply a promise in those cases where an express contract has been made touching the same subject. This leads us to the consideration of the special agreement which was entered into by the plaintiff with the committee; the language of which is perfectly plain and intelligible. By the terms of the appointment of the plaintiff by the committee, he must have at once seen and understood what were to be his rights and the mode of obtaining the stipulated compensation. The expressions as to this point are these: " and said *Emerson* to receive his pay for making said road, as soon as the same can be realized by any of the modes which the law provides for raising money for defraying the expenses in such cases, by warrant of distress or other means, after the faithful completion of his contract." The bond which was given by the plaintiff for the faithful performance of the contract, is an express assent to all the conditions and terms of it. But it is contended by the counsel for the plaintiff, that the law implies a promise on the part of the county, because the bond was given to the county treasurer, and because he could have recovered on the bond, damages for the use of the county, if the plaintiff had not made the road according to the

terms of the contract. Here the same answer may be given which has been once given already, namely, the law will not imply from an act done by the court or their committee, a promise or obligation on the part of the county, when an express promise made by either of them could not impose such an obligation on the county. Besides, the bond was taken to secure the accomplishment of the proposed object. To whom should it have been given? It was not intended to secure any beneficial interests to the county, but for public purposes, and to secure a public object, as a part of the act of the court towards completing the road. But it has been further contended by the counsel that the refusal of the county commissioners (who are the successors of the Court of Sessions) to issue warrants of distress until after the expiration of sixty days, next after the road was completed and accepted, and the warrants were applied for, entitled the plaintiff to his action against the county; inasmuch as such refusal was a desertion of the special contract made with the committee and a violation of the plaintiff's rights under the contract, in consequence of which the warrants of distress have proved wholly unavailing. In reply to this objection we would observe that the county commissioners had a legal right, in their discretion, to postpone issuing warrants for sixty days, or they had not. If they had a legal right so to do, then, on that account the plaintiff has no ground of complaint or any new rights in consequence of their decision; and if they had no right to grant the delay in denial of his application, are the inhabitants of the county to be answerable for this illegal proceeding of the commissioners, and in an action of *assumpsit* too? If the Court of Sessions or the county commissioners cannot by any lawful act, in the discharge of their duty, subject the county to the payment of the expense in question, or by any express contract, when transcending their jurisdiction, will the law imply a promise on the part of the county, as the legitimate consequence of an illegal act of such court or commissioners? We think not. The remedy on which the plaintiff must have relied, when he contracted with the committee, is still at his command, and, we should suppose it may be rendered an effectual one, if he

should resort to it. He made the contract understandingly, and should he not realize all the advantages he anticipated from it, it is no fault of the law. Our opinion is that the action cannot be maintained. The verdict must be set aside and a nonsuit entered. This decision on the merits, renders the question as to the legality of the service of the writ, of no importance ; and the examination as to the proper form of the warrants and the admissibility of the clerk as a witness, unnecessary now.          *Plaintiff nonsuit.*